IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL PAYNE | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO.: 2:20-cv-00016-RWS |
| AUKEY INTERNATIONAL | : | |
| LIMITED; SHENZHEN AUKEY | : | |
| E-BUSINESS CO., LTD; and | : | |
| JOHN DOES #1 – 5 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT – 2ND AMENDED

## SUMMARY

1. This is a product liability case arising out of a defective electrical hand tool called a TACKLIFE DM-03 multimeter with serial number H21H-A02677 ("the subject meter").

2. Plaintiff Michael Payne seeks compensation for the horrific burn injuries suffered while using the subject meter.

3. The subject meter which should have interrupted an electrical current and protected Michael Payne for an arc blast explosion, but due to the subject meter's

defects, it did not.

4. Defendants are Chinese companies who sell large amounts of product on Amazon and other e-commerce outlet where Defendants frequently engage in copyright infringement, trademark infringement, and violate other anti-competitive practices, while at the same time attempting to conceal their identity and keeping most of their assets in China where the Chinese government will not enforce American Court judgments against Chinese companies. *See, e.g., Venus Fashion, Inc. v. Aukey International Limited and Aukey E-Business Co., Ltd.*, Civil File Action No. 0:16-cv-61752 (SD Fl 2016); *BigMouth, LLC v. Aukey International Ltd.*, Civil File Action No. 1:17-CV-10212 (Mass 2016).

5. Each Defendant purposefully availed themselves of the privilege of doing business in Georgia because they conducted regular business with Georgia customers using third-party sites – particularly, Amazon – as a conduit.

6. Defendants manufactured, designed, imported the subject multimeter.

7. Alternatively, upon information and belief, nonparty Shenzhen Temie Technology Co., Ltd. aided in the manufacture of the subject multimeter. However, nonparty Shenzhen Temie Technology Co., Ltd. is an alter ego, joint venture and

agent of Defendants and is part of the same corporate family as Defendants.[1]

8. Defendants are collectively considered the marketers, manufacturers, inspectors, testers, importers, distributors, and creators of the subject multimeter. Below is a photograph of the subject meter after the incident:



---

[1] The e-mail address of the product director Shenzen Temie listed with the FCC has an Aukey domain address at https://fccid.io/2AM5P.



9. Below is a photograph of Plaintiff Michael Payne's hand taken shortly after the incident:



## PARTIES, SERVICE, AND VENUE

10. Plaintiff:

    a. Plaintiff Michael Payne is a resident and citizen of the State of Georgia.

    b. Plaintiff Michael Payne resides at is 949 Millard Farmer Road, Newnan, Coweta County, Georgia, 30263.

11. As to Defendant Aukey International Limited ("Aukey International"):

    a. Aukey International marketed, manufactured, inspected, and sold the subject meter.

    b. Aukey International operates under the name "TACKLIFE" (amongst others), particularly when it conducts its business in the United States.

    c. To the extent that Aukey International, Defendant Shenzhen Aukey E-Business Co., Ltd., and nonparty Shenzhen Temie Technology Co., Ltd. have any separateness, they were, at all relevant times, engaged in a joint venture in which they combined their property, their labor, or both in a joint undertaking with mutual rights of control.

    d. Further, to the extent that Aukey International, Defendant Shenzhen Aukey E-Business Co., Ltd., and nonparty Shenzhen Temie Technology Co., Ltd. have any separateness, they were, at all relevant times, alter egos of one another and operating as business conduits of

each other.

e.  Aukey International is a for-profit Chinese Corporation which purposely conceals its identity so that it cannot be served with lawsuits in the United States and be held account for its conduct. *See, e.g., BigMouth, Inc. v. Aukey International Ltd.*, Civil File Action No. 17-cv-10212-DPW (US Dist. Mass. 2017) ("Electronic service is appropriate and necessary in this case because the Defendant...has provided incomplete and/or contradictory physical address information in order to conceal its location and avoid liability for its unlawful conduct...")

f.  Upon information and belief, Aukey International uses multiple contradictory physical addresses in Shenzhen China, including:

 i.  No. 102, Building 09, China South City, Pinghu Town, Longgang District, Shenzhen, Guangdong 518111, CHN;

 ii.  No. 102, Building P09, South China International Printing Paper Packaging Logistics Zone, No.1, Huanan Ave, Pinghu Street, Longgang District, Shenzhen, Guangdong, 518000 China;

 iii.  Room 102, Building P09, Huanan International Zone, No.1 Huanan Rd, Pinghu Town, Longgang District, Shenzhen China;

and

    iv. No. 102, Building P09, Electronics Trade Center, Huanan City, Pinghu Town, Shenzhen, 51811, China

g. Aukey International operates its business in the United States through its United States managing agent, Chief Operating Officer, and Operations Director Roy Cheung who is believed to live in Reno Nevada.[2]

h. Aukey International can be served at its registered office through its registered Company Secretary "Gold Secretary Limited" at Room 1202, On Hong Commercial Building, 145 Hennessy Road, Wanchai, Hong Kong, China.

i. Aukey International was properly served with process in this matter.

j. Venue is proper in this Court as to Aukey International under O.C.G.A. § 14-2-510(b)(4). *See Pandora Franchising, LLC v. Kingdom Retail Group, LLLP*, 299 Ga. 723, 727 (2016).

12. As to Defendant Shenzhen Aukey E-Business Co., Ltd. ("Aukey E-Business"):

---

[2] https://www.linkedin.com/in/roy-cheung-a864b0171/

a.  Aukey E-Business marketed, manufactured, inspected, and sold the subject meter.

b.  Aukey E-Business also operates under the name "TACKLIFE" (amongst others), particularly when it conducts its business in the United States.

c.  To the extent that Aukey International, Aukey E-Business and nonparty Shenzhen Temie Technology Co., Ltd. have any separateness, they were, at all relevant times, engaged in a joint venture in which they combined their property, their labor, or both in a joint undertaking with mutual rights of control.

d.  Further, to the extent that Aukey International, Aukey E-Business and nonparty Shenzhen Temie Technology Co., Ltd. have any separateness, they were, at all relevant times, alter egos of one another and operating as business conduits of each other.

e.  Aukey E-Business is a for-profit Chinese Corporation which purposely conceals its identity so that it cannot be served with lawsuits in the United States and be held account for its conduct.

f.  Upon information and belief, Aukey E-Business uses multiple contradictory physical addresses in Shenzhen China, including:

  i.  No. 102, Building 09, China South City, Pinghu Town,

Longgang District, Shenzhen, Guangdong 518111, CHN;

ii. No. 102, Building P09, South China International Printing Paper Packaging Logistics Zone, No.1, Huanan Ave, Pinghu Street, Longgang District, Shenzhen, Guangdong, 518000 China;

iii. Room 102, Building P09, Huanan International Zone, No.1 Huanan Rd, Pinghu Town, Longgang District, Shenzhen China; and

iv. No. 102, Building P09, Electronics Trade Center, Huanan City, Pinghu Town, Shenzhen, 51811, China

g. Aukey E-Business operates its business in the United States through its United States managing agent, Chief Operating Officer, and Operations Director Roy Cheung who is believed to live in Reno Nevada.[3]

h. Aukey E-Business can be served at the following addresses:

i. No. 102, Building P09, Huanan International Printing Paper Packaging Logistics Area (Phase 1), 1 Huanan Avenue, Pinghu Street, Longgang District, Shenzhen, Guangdong, China; OR

ii. Room 102, Bld P09, Huanan International Zone, No.1 Huanan

---

[3] https://www.linkedin.com/in/roy-cheung-a864b0171/

Rd, Pinghu, Longgang District, Shenzhen.

i. Aukey E-Business was properly served with process in this matter.

j. Venue is proper in this Court as to Aukey E-Business under O.C.G.A.
§ 14-2-510(b)(4).  *See Pandora Franchising, LLC v. Kingdom Retail
Group, LLLP*, <u>299 Ga. 723, 727</u> (2016).

## JURISDICTION

13. Specifically, and concerning personal jurisdiction, Plaintiff's assert the following which, upon information and belief,[4] he believes to be true:

a. Aukey International, Aukey E-Business and Aukey E-Business and
nonparty Shenzhen Temie Technology Co., Ltd. have no real
separateness and any supposed separateness between them is merely a
subterfuge.  There is a unity of interest and ownership of the companies,
they are mere instrumentalities used to transact the affairs of each other,
and there is no separate corporate personality between them.  As a
result, and for the remainder of this Complaint, Aukey International,
Aukey E-Business, and nonparty Shenzhen Temie Technology Co.,

---

[4] The below statements are made based on Plaintiff's internet research, review of the product placards, review of the product literature, review of Aukey's background, knowledge of about product manufacturers enter joint venture agreements to have trademarks they do not own on their products, and background knowledge about how products typically move in modern commerce. This includes Plaintiff's counsel basic knowledge of how Amazon and other third-party sites typically structure sales.

Ltd.  are sometimes jointly referred to as "Aukey."

b.  To the extent that there is any actual separateness Aukey International, nonparty Shenzhen Temie Technology Co., Ltd., and Aukey E-Business (there is not), then every allegation of this Complaint made against "Aukey" is made against both Defendant Aukey International and Defendant Aukey E-Business, individually.

c.  Defendants are collectively the marketers, manufacturers, inspectors, testers, importers, distributors, and creators of the subject multimeter.

d.  At all relevant times, Defendants were engaged in a joint venture where the companies' combined their property or labor, or both, in a joint undertaking for profit with rights of mutual control.

e.  At all times mentioned herein, Defendants are agents, alter egos, joint ventures, and wholly owned and controlled subsidiaries of one another who have formed a multitude of corporate identities but who operate as one entity. As such, these Defendants cannot use their corporate form to shield their wrongdoing and avoid tort liabilities, tax liabilities, and other liabilities under the law.

f.  At all relevant times herein, Defendants acted in all aspects as agent, apparent agent, and alter ego for each other Defendant and as agent,

apparent agent, and alter ego of their ultimate parent company (hereinafter collectively referred to as "Aukey").

g. Defendants made the defective products detailed in this Complaint, among others, available for sale to consumers through an established distribution chain, including on Aukey's website (www.tacklifetools.com) and through third-party retailers such as Amazon eBay and Rakuten.com as part of a broad, long-term e-commerce business that extended its reach to consumers in Georgia.

h. Aukey regularly transacts, solicits and/or conducts business in Georgia, including deriving substantial revenue from goods sold to and used by consumers in Georgia, through these third-party retailers.

i. Because Aukey sold the subject meter into the stream of commerce, knowing and intending that it would be sold to residents of the United States and Georgia, Aukey is subject to the specific jurisdiction of this Court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980); *Betancourt v. Endo Pharmaceuticals, Inc.*, No. 1:11-CV-3805, 2014 WL 10677480, at *5-9 (N.D. Ga. Dec. 17, 2014).

j. Aukey has made the defective products detailed in this Complaint, among others, available for sale to consumers through an established

distribution chain, including on Aukey's website (www.tacklifetools.com) and through third-party retailers such as Amazon eBay and Rakuten.com as part of a broad, long-term e-commerce business that extended its reach to consumers in Georgia.

i.   Aukey markets, manufactures, inspects, sells, imports, and distributes meters, including the subject meter.

ii.  Aukey generally manufactures its meter in China, then sells them in the United States and in other markets around the world, including Georgia.

iii. Aukey is a sophisticated business, operating as "a top ranked global Amazon seller and has distribution partners in over 50 countries"[5] and engaging in a substantial volume of transactions such that Aukey is selling its products throughout the United States in all markets, including Georgia.

iv.  Aukey targets the United States for the sale of its meter and has an "Amazon Store" that is used exclusively for sales of its product in the United States including Georgia.[6]

---

[5] https://www.linkedin.com/company/aukeyofficial/about/
[6] https://www.amazon.com/stores/page/B4F70606-6B67-46A0-BD18-938B37E59982?store_ref=SB_A04235323PLUF1B69AADD&pf_rd_p=e037c154-e093-48a4-b127-

v.   Aukey targets the United States, including Georgia, for the sale of its meter and has a separate "Amazon Store" that is used exclusively for sales of its TACKLIFE brand.[7]

vi.   Aukey has a Tacklifetools.com website where it advertises its meters and directs customers in the USA and Georgia to its US Amazon store for purchasing those meters.   The website provides customer support in the "US Market", including Georgia, through two different web e-mail addresses.[8]   The website also directs users that the subject meter can be purchased through United States Amazon and it provides a radio button to the purchase page through Amazon for Georgia consumers.[9]

vii.   Aukey has a TackLifeTools Facebook page where it advertises in Georgia for Facebook that its products can be purchased in the United States (including Georgia) through Amazon, and the

---

477e5e294e3f&hsa_cr_id=2097131040501&lp_slot=auto-sparkle-hsa-tetris&lp_asins=B00M6QODH2,B00QM9KL5M,B07FYVJ212&lp_mat_key=aukey&lp_query=aukey%20amazon%20store&sb-ci-n=brandLogo&sb-ci-v=images%2FS%2Fgladiator-image-upload-prod%2F0%2FATVPDKIKX0DER%2F4ee7230be4ec87de69e2d7f51035f19e._SR218%2C200_.jpg
[7] https://www.amazon.com/stores/Tacklife/Tacklife/page/0EC3B675-C16D-448D-8435-CE3028C90F4B
[8] https://www.tacklifetools.com/portal/page/index/id/7
[9] https://www.tacklifetools.com/product/product/index/id/12

Facebook page contains a link for a United States Only instant messenger app with the handle "m.me/Tacklife.us" for use by Georgia residence.[10]

    viii.    Aukey has applied for and received protection under United States Law for the following trademarks for use with its TACKLIFE brand in the United States, including the use of trademarks and protection of the trademarks in Georgia:



[11]



[12]

[13]

    ix.    Aukey has also applied for and received protection under United States Law for the numerous trademarks related to the

---

[10] https://www.facebook.com/pg/Tacklife.US/about/?ref=page_internal
[11] http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:iaq506.2.1
[12] http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:iaq506.2.3
[13] http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:iaq506.2.4

"Aukey" name in the United States as well, which includes protection in Georgia.[14]

x.   Aukey clearly targets the United States as a whole for its businesses, including Georgia, and clearly recognizes that it sells its products including the subject meter in Georgia.

xi.   Sophisticated companies like Aukey, reasonably expects its products to be sold in Georgia when it sells those products to an affiliated company for the purpose of distributing the products throughout the United States and does not exclude Georgia from the territories where its products may be sold.

xii.   Aukey's contacts with Georgia are not random, fortuitous, or because of the unilateral activity of a third person. Instead, they are the result of Aukey's desire to sell its products like the subject multimeter throughout the United States, including Georgia, through its affiliated distributors.

xiii.   Because Aukey conducted regular business in Georgia and used Amazon as a broader forum for commercial activity, their

---

[14] http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:iaq506.3.5;
http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:iaq506.3.2;
http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4808:iaq506.3.4

use of the third-party Amazon website does not shield them from jurisdiction where they have undoubtedly availed themselves of the privileges and benefits of conducting business in Georgia.

xiv.   Aukey sold the subject meter through Amazon to Plaintiff's employer Fire Equipment Services Center, in Newnan Georgia.

xv.   Defendants, through the use of Amazon, shipped the subject meter from Chine to Plaintiff's employer Fire Equipment Services Center, in Newnan Georgia.

xvi.   Plaintiff received the meter in Georgia through his employer Fire Equipment Services Center.

xvii.   Plaintiff was injured in Georgia by the meter.

xviii.   Defendants derive substantial revenue from sales to Georgia consumers.

xix.   Defendants ship substantial products to Georgia.

xx.   Defendants are engaged in consistent commerce in Georgia, in part, through its intermediary, Amazon.

xxi.   Alternatively, Defendants purposefully conceal how they do business in an effort to gauge the US test system but actually

do substantial US business; and if Defendants Georgia contacts are not sufficient to confer personal jurisdiction, there is a US Forum where this case can be brought and this case should be transferred to that form.

k.   A court may exercise specific personal jurisdiction over a party that maintains a commercial website that is devoted primarily to contract formation and the facilitation of transactions, as is the case here. See Fusionbrands, Inc. v. Suburban Bowery of Suffern, Inc., 2013 U.S. Dist. LEXIS 138138, *17-18 (N.D. Ga. 2013)("in maintaining its Amazon.com storefront, defendant actively directed its sales activities to this district.")

14. Because Georgia's long-arm statute extends as far as the due process clause of the federal Constitution permits, Georgia's long-arm statute authorizes this Court to exercise jurisdiction over Defendants.  See Allstate Ins. Co. v. Klein, 262 Ga. 599, 600 n.1 (1992).

## FACTS AS TO THE SUBJECT METER

15. Aukey manufacturers and designs the subject meter.

16. Aukey imports the subject meter into the United States.

17. Aukey advertises for the sale of the subject meter in the United States through its Website, Facebook page, Instagram Page, LinkedIn Page, and Amazon Store.

Aukey's entire web presence as it relates to the subject meter directs customers to the Amazon Store to purchase the subject meter.

18. Through the use of Amazon as an intermediary, Aukey sells large volume of TACKLIFE products including the subject meter throughout the United States.

19. Upon information and belief, at some point after January 1, 2012, Fire Equipment Services Center (located at 34 Strong Lane Drive in Newnan Georgia) purchased the subject meter through Amazon.

20. At some point after January 1, 2012, Fire Equipment Services Center provided the subject meter to Plaintiff for use in his work in the Fire Protection industry.

21. The subject meter had the TACKLIFE logo on it.

22. The subject meter was defective, unreasonably dangerous, and not accompanied by proper warnings.

## FACTS AS TO THE SUBJECT INCIDENT

23. On the November 19, 2018, Plaintiff was sent to Sears Logistics (580 Rayco Drive, Pendergrass, GA) to do an annual fire safety inspection at the facility.

24. During his work, Plaintiff used the subject meter to check the voltage on the fire pump controller as part of the inspection.

25. Upon information and belief, the fire pump controller typically runs at 480 volts.

26. When Plaintiff touched the probe tips to Phase 1 and Phase 2 on the fire pump controller, there was a short inside the subject meter which allowed energy to build up at the subject meter's probe tips and cause an arc blast explosion which badly injured Plaintiff.

27. Here is a photograph of the inside of the fire pump controller taken after the incident:



28. At all relevant times, Plaintiff was exercising due regard for his own safety.

29. This incident would have been avoided if the subject meter contained any number of inexpensive safety features to prevent arc blast explosions and provide over-current protection to the meter, including but not limited to, a high energy fuse on all circuits within the meter than could break the circuit in one cycle (a fractions

of a second) and prevent the arc blast explosion from occurring.

## DEFENDANTS' KNOWLEDGE

30.Defendants knew or should have known that the subject meter was defective and unreasonably dangerous and was not accompanied by proper warnings.

31.Defendants knew or should have known that the subject meter placed the public in general, and Plaintiff in particular, in danger of bodily injury.

32.Defendants foresaw or should have foreseen the malfunction and failure of the subject meter, and the injury that followed.

33.Defendants knew of inexpensive alternative designs, alternative manufacturing practices, and alternative (or additional) warnings that would have made the subject meter safer.

34.Despite this knowledge, Defendants marketed, manufactured, inspected, tested, imported, distributed, and sold the subject meter.

## LIABILITY OF DEFENDANTS AUKEY

35.Because Aukey had a duty to manufacture and sell reasonably safe products but breached that duty, Aukey is strictly liable for the defective and unreasonably dangerous condition of the subject meter.  O.C.G.A. § 51-1-11(b).

36.Because Aukey had a duty to issue reasonable and adequate warnings but breached that duty, Aukey is liable for failure to warn.

37. Because Aukey had a duty to exercise due care in the marketing, manufacture, inspection, testing, importation, distribution, and sale of the subject meter but breached that duty, Aukey is liable for negligence.

38. Because Aukey had a duty to comply with all applicable regulations but breached that duty, Aukey is liable for the violation of those regulations.

## CAUSATION

39. But for Defendants' misconduct and Defendants' breaches of their duties, Plaintiff would not have been injured.

40. Defendants' misconduct and Defendants' breaches of their duties proximately caused the injury to Plaintiff.

## DAMAGES

41. Plaintiff Michael Payne's body, and his hands in particular, are gravely injured and scared.  He has undergone multiple skin graft surgeries to both the hands and upper legs.  He now suffers from carpel tunnel syndrome.

42. Defendants should compensate Mr. Michael Payne for:

a.  future interference with daily living;

b.  past interference with daily living;

c.  future pain and suffering;

d.  past pain and suffering;

e.  future medical expenses;

f.  past medical expenses;

g.  disfigurement;

h.  disability;

i.  fright, shock, and terror; and

j.  other damages to be proven at trial.

43. Because Defendants' actions evince a species of bad faith and stubborn litigiousness and have caused Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover their necessary expenses of litigation, including reasonable attorneys' fees and expenses, pursuant to O.C.G.A. § 13-6-11 and other statutory and common law.

44. Defendant acted with reckless disregard for the safety and well-being of the citizens of the State of Georgia, including Plaintiff Payne.

45. Defendant's misconduct was wanton, as defined under O.C.G.A. § 51- 12-5.1, and showed an entire want of care which would raise the presumption of conscious indifference to consequences, in that it designed, tested, manufactured, inspected, marketed, modified, distributed, and sold the subject machine with knowledge of the risks to life and limb described herein. Such conduct warrants the imposition of punitive damages against Defendants without limitation or cap.

## **PRAYER FOR RELIEF**

46. Plaintiff request:

    a.  trial by jury,

    b.  that judgment be entered against Defendants and in favor of

        Plaintiff, and

    c.  such other relief as the Court deems just and appropriate.


This 9th day of March, 2020.


*/s/ Matthew B. Stoddard*
Matthew B. Stoddard, Esq.
Ga. Bar No.: 558215
Janelle E. Zabresky, Esq.
Ga. Bar No.: 385383
THE STODDARD FIRM
5447 Roswell Road, Suite 204
Atlanta, GA 30342
P: 404-593-2695
F: 404-264-1149
matt@thestoddardfirm.com
janelle@thestoddardfirm.com

## CERTIFICATES OF COMPLIANCE & SERVICE

This is to certify that the foregoing document has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the pleading was prepared using Times New Roman font, point 14.

I further certify that I have served a true and correct copy of the foregoing upon all counsel of record using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

**<u>Attorneys for Defendants:</u>**
Ashley C. Webber, Esq.
S. DeAnn Bomar, Esq.
SWIFT, CURRIE, MCGHEE & HIERS, LLP
The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309
P: 404-874-8800
ashley.webber@swiftcurrie.com
deann.bomar@swiftcurrie.com

This 9th day of March 2020.

/s/ Matthew B. Stoddard
Matthew B. Stoddard